JS 44 (Rev. 12/07) (cand rev 1-16-08) E-filing EDL

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

**I. (a) PLAINTIFFS**

ALICE GEVARTER

**DEFENDANTS**

ASTRAZENECA PHARMACEUTICALS LP and ASTRAZENECA LP

**(b)** County of Residence of First Listed Plaintiff Alameda
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive, Suite 700
Newport Beach, CA 92660
949-720-1288

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

PERSONAL INJURY
- [ ] 362 Personal Injury—Med. Malpractice
- [X] 365 Personal Injury — Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities – Other
- [ ] 440 Other Civil Rights

**PRISONER PETITIONS**
- [ ] 510 Motions to Vacate Sentence
- Habeas Corpus:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**FORFEITURE/PENALTY**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt.Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 463 Habeas Corpus – Alien Detainee
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity):**
28 U.S.C. 1332

Brief description of cause:
Negligence/Fraud/Product Liability/Breach of Warranty/Concealment

**VII. REQUESTED IN COMPLAINT:** [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $**

CHECK YES only if demanded in complaint: **JURY DEMAND:** [X] Yes [ ] No

**VIII. RELATED CASE(S) IF ANY** PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)** [X] SAN FRANCISCO/OAKLAND [ ] SAN JOSE

DATE May 15, 2008

SIGNATURE OF ATTORNEY OF RECORD Mark P. Robinson, Jr.

FILED 08 MAY 15 PM 3:52

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

E-filing

| | | |
|---|---|---|
| ALICE GEVARTER, | § | |
| | § | C 08 02493 |
| Plaintiff, | § | |
| | § | Civil Action No. |
| v. | § | |
| | § | **COMPLAINT FOR DAMAGES** EDL |
| | § | **AND DEMAND FOR JURY TRIAL** |
| ASTRAZENECA PHARMACEUTICALS LP and ASTRAZENECA LP, | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

## I. INTRODUCTION

1. Plaintiff, by undersigned counsel, hereby institutes this Complaint against AstraZeneca Pharmaceuticals LP and AstraZeneca LP ("Defendants"). This case involves the antipsychotic drug Seroquel (also known as quetiapine fumarate), designed, formulated, promoted, sold and distributed by Defendants in the United States. Seroquel has caused a high incidence of diabetes, hyperglycemia, pancreatitis, ketoacidosis and diabetic comas, as well as other severe and permanent injuries.

## II. INTRODUCTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of a state which is different from the state where the Defendants are incorporated and have their principal places of business, and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).

These claims are subject to *Seroquel Products Liability Litigation*, MDL No. 1769, assigned to the Honorable Anne C. Conway, United States District Court for the Middle District of Florida.

3. Venue is proper within this District pursuant to 28 U.S.C. § 1391 because Defendants sell and distribute their products, including Seroquel, in California and as such, have purposely availed themselves of the privilege of conducting activities within California. Defendants have thus conducted substantial business in this District and are amenable to suit here.

## III. PARTIES

A PLAINTIFF

4. Plaintiff Alice Gevarter is a citizen of City of Hayward, Alameda County, California and was injured as a result of taking Seroquel.

B DEFENDANTS

5. Defendant AstraZeneca Pharmaceuticals LP is a Delaware limited partnership with its principal place of business in Delaware. At all times mentioned herein Defendant AstraZeneca Pharmaceuticals LP was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing Seroquel throughout the United States, including Minnesota and California. Defendant AstraZeneca Pharmaceuticals LP does business by agent in California and, on information and belief, at all times relevant, advertised, marketed, promoted, sold and/or distributed Seroquel in California. Defendant AstraZeneca Pharmaceuticals LP is the United States Subsidiary of AstraZeneca PLC, and was created as a result of the union of

Procedure will be sent to the following AstraZeneca representative: Paulette Hendrix, AstraZeneca Pharmaceuticals LLP, Law Department (FOP3), 1800 Concord Pike, Wilmington, DE 19850.

8. When the word "Defendants" or "AstraZeneca" is used herein, it is meant to refer to the Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP, mentioned in the style of this Complaint, which are liable for Plaintiff's injuries.

9. Defendants are, and were at all relevant times, duly authorized to conduct business in the State of California.

10. Defendants have transacted business in the State of California.

11. Defendants regularly conduct and solicit business within the State of California.

12. At al relevant times, Defendants, through their agents, servants and employees, were the designers, manufacturers, marketers, advertisers, distributors, and sellers of Seroquel, also known as quetiapine fumarate.

13. Defendants have substantial revenue from goods used or consumed in the State of California.

14. Defendants expected, or should have expected, that their actions could or would have consequences within the State of California.

## IV. CONDITIONS PRECEDENT

15. All conditions precedent have been performed or have occurred.

## V. NATURE OF THE CASE

16. Plaintiff Alice Gevarter was prescribed and ingested the prescription drug Seroquel (quetiapine fumarate), manufactured, distributed and/or sold by Defendants.

17. Plaintiff continued taking Seroquel until on or about April 2007. As a result of the ingestion of Seroquel, Plaintiff developed diabetes mellitus on or about May 2006, and was permanently injured.

## COUNT I

## (NEGLIGENCE)

18. The allegations previously set forth in paragraphs 1 through 17 are re-alleged and incorporated by reference within this count.

19. From on or about 1997 through today, Defendant AstraZeneca manufactured, created, designed, tested, labeled, sterilized, packaged, licensed, distributed, supplied, marketed, sold, and advertised and placed in the stream of commerce the pharmaceutical drug product "quetiapine fumarate" which was sold in the United States under the trade name "Seroquel."

20. Defendant AstraZeneca had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of Seroquel, including a duty to assure that Seroquel did not cause users to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs, and a duty to warn physicians and patients of any serious risks associated with Seroquel.

21. The prescription drug Seroquel is an antipsychotic medication belonging to a class of drugs referred to as "atypical" or "second-generation" anti-psychotics. This class of drugs, including Seroquel, causes an increased risk of rapid weight gain, hyperlipidemia, hypercholesteremia, hyperglycemia, diabetes mellitus, ketoacidosis, seizures, hyperosmolar coma, death, pancreatitis, liver disease, kidney disease, blindness, and other serious side effects including neuroleptic malignant syndrome and tardive dyskinesia, and other serious health problems associated with diabetes, including heart disease, kidney disease, diabetic neuropathy, digestive problems, bladder problems, loss of vision, damage to blood vessels, high cholesterol, difficulty in healing sores, amputation of feet and limbs, stroke, and death.

22. Seroquel is commonly prescribed to patients to aid in the treatment of schizophrenia and manic episodes associated with bipolar I disorder. The pharmacologic action of these drugs is unknown but is thought to be dependent on their ability to block or moderate the level of dopamine and/or serotonin; chemicals found in the brain that in excessive amounts may possibly cause abnormal thinking and hallucinations.

23. The anti-psychotic drug market is $12 Billion worldwide. Defendant AstraZeneca viewed the Seroquel as a blockbuster drug with significant projected growth potential. In 2003, Seroquel reached over $2 Billion in annual sales, and, in 2005, Seroquel reached over $2.8 Billion in annual sales.

24. Seroquel was initially marketed by Defendant AstraZeneca as safe and effective for the treatment of schizophrenia, and later for bipolar mania, promising greater effectiveness and fewer side effects than with other available antipsychotics.

25. The risk associated with this class of drugs, including Seroquel, and the onset of diabetes is higher than for older, less expensive drugs used to treat schizophrenia.

26. The product warnings in effect for Seroquel prior to and during the time period that Plaintiff was taking this drug product were vague, incomplete or otherwise wholly inadequate, both substantively and graphically, to alert prescribing physicians, as well as consumer patients, to the actual risks associated with this drug.

27. Despite the fact that Defendant AstraZeneca knew or should have known that Seroquel was associated with the aforesaid adverse effects, including diabetes mellitus, said Defendant recklessly, negligently, and with willful and wanton indifference to the health and safety of consumers, including Plaintiff, failed to include any warning regarding hyperglycemia, diabetes mellitus, or related conditions until on or after January 2004. Prior to that time, the label was defective in that it failed to advise prescribing doctors or the public, including Plaintiff, of the need to conduct fasting blood sugar tests before and during treatment and that treatment should be stopped if symptoms of hyperglycemia or diabetes mellitus appeared. In fact, the January 2004 label is still defective in that it does not contain a black box warning for diabetes mellitus or hyperglycemia, fails to warn physicians that Seroquel should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history of diabetes, and only recommends blood glucose testing for patients with "risk factors" and those who develop "symptoms" of hyperglycemia.

28. The marketing and promotional efforts of Defendant AstraZeneca, through its advertisers and sales force, overstated the benefits of Seroquel and minimized and downplayed the risks associated with this drug. These promotional efforts were made, while fraudulently, willfully and wantonly withholding important safety information from the physicians, the FDA, and the public, specifically, that Defendant AstraZeneca was aware of numerous reports of diabetes associated with the use of these drugs, well beyond the background rate and well beyond the rate for other anti-psychotic agents.

29. After Seroquel was introduced to the U.S. market, studies conducted in Europe and Japan revealed that numerous patients treated with atypical antipsychotics, including Seroquel, experienced a significantly higher incidence of diabetes and hyperglycemia.

30. Shortly after Defendant AstraZeneca began selling Seroquel, reports of consumers who were using Seroquel suffering from hyperglycemia, hyperlipidemia, acute weight gain, diabetes mellitus, pancreatitis, and other severe diseases and conditions associated with Seroquel began to surface. Defendant AstraZeneca knew, or was reckless in not knowing, of these reports. Furthermore, Defendant AstraZeneca was aware of studies and journal articles linking use of Seroquel with these and other severe and permanent hyperglycemia-related adverse events and diseases prior to and during the time that Plaintiff ingested Seroquel.

31. In December 2000, an article published in the *British Medical Journal* found no clear evidence that atypical anti-psychotics like Seroquel were more effective or better tolerated than conventional anti-psychotics including Haldol and Thorazine.

32. By July 2001, Defendant AstraZeneca had received at least 46 reports of diabetes mellitus in patients taking Seroquel, including reports in the medical literature, and including at least 21 cases of ketoacidosis or acidosis and 11 deaths, and, by the end of 2003, AstraZeneca had received at least 23 more. Most cases appeared within 6 months of initiating Seroquel therapy.

33. A study of diabetes mellitus with use of atypical neuroleptics in the treatment of schizophrenia, published in 2002, found that the prevalence of diabetes in a large national sample was significantly increased for patients who received quetiapine, compared to typical antipsychotic medication.

34. In a retrospective case-controlled cohort study of diabetes mellitus and antipsychotic treatment in the United States, published in 2003, when researchers compared the hazard for those receiving quetiapine to the hazard with respect to the general population, the researchers found the hazard ratio to be nearly double the risk for controls.

35. In a study presented at an international conference in 2003, researchers reported that patients taking Seroquel had a significantly increased risk of diabetes compared to those taking older antipsychotic drugs.

36. Recently, researchers at the National Institute of Mental Health published a report on atypical antipsychotics, including Seroquel, which found that the majority of patients in each group discontinued their assigned treatment owing to lack of efficacy or intolerable side effects or for other reasons and that the atypicals, including Seroquel,

were no more effective than the older, cheaper, and still available conventional antipsychotic perphenazine.

37. Upon information and belief, prior to and during the time Plaintiff ingested Seroquel, the Japanese label for Seroquel provided a detailed warning regarding the risks of diabetes associated with Seroquel, and specifically informed physicians regarding the necessity of medical monitoring of patients on Seroquel. At the time the Plaintiff ingested Seroquel, Defendant AstraZeneca had not adopted this safer, more accurate label for the U.S. distribution of Seroquel.

38. Upon information and belief, prior to and during the time of use of Seroquel by Plaintiff, the Japanese label warned specifically of the diabetes risk, prominently in the beginning of the package label stating:

a. Quetiapine fumarate is contraindicated for use in patients with diabetes or a history of diabetes.

b. Quetiapine fumarate should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history of diabetes.

c. Patients receiving quetiapine fumarate should be carefully monitored for symptoms of hyperglycemia, and the drug should be discontinued if such symptoms occur. The symptoms of severe hyperglycemia include weakness, excessive eating, excessive thirst, and excessive urination.

d. Physicians should educate patients and their family members about the risk of serious hyperglycemia associated with quetiapine fumarate and how to identify the symptoms of hyperglycemia

39. In April 2002, the Japanese Health & Welfare Ministry issued emergency safety information regarding the risk of diabetes, diabetic ketoacidosis, and hyperosmolar coma for patients prescribed Seroquel. On information and belief, prior to that time, Defendant AstraZeneca was involved in discussions with the Japanese agency regarding labeling changes for Seroquel and other atypicals.

40. While warning of the association of Seroquel with diabetes, glucose dysregulation, ketoacidosis, weight gain and the need for medical monitoring in Japan, Defendant AstraZeneca failed to provide the same or similar warnings to the public and prescribing physicians in the United States.

41. Prior to and during the period of ingestion by Plaintiff, AstraZeneca was aware of studies and reports that confirmed previous studies describing a link between the class of atypical anti-psychotics and diabetes. These reports, described an increased incidence of diabetes and hyperglycemic-related health issues in patients receiving Seroquel®, compared to patients receiving older anti-psychotics, or even other atypical anti-psychotics.

42. Despite having long possessed this information, Defendant delayed taking action to correct the obvious defect in its product labeling for months, instead haggling with the FDA over the wording of any proposed labeling change, clearly in an effort to avoid any adverse affect from a marketing perspective. During this period, Defendant

did not pass on this information regarding the diabetes risk to physicians or issue new labeling containing specific warnings until approximately January 2004. Even after Defendant added a warning about hyperglycemia and diabetes mellitus to the labeling for Seroquel, Defendant continued to tell physicians and consumers that it did not believe that Seroquel caused diabetes, and failed to add any warning regarding pancreatitis. In 2004 the FDA issued a warning letter to Defendant for accompanying the new label with a misleading Dear Doctor letter that downplayed the risk of diabetes and neglected to warn prescribers and patients that patients taking Seroquel needed to be continually monitored for signs and symptoms of diabetes. Again, in November 2006, the FDA issued another warning letter to Defendant for distributing false and misleading promotional materials to doctors and institutions regarding the risk of diabetes in users of Seroquel and downplaying the risk

43. Defendant AstraZeneca was negligent in the design, manufacturing, testing, advertising, marketing, promotion, labeling, warnings given, and sale of Seroquel in that, among other things, Defendant AstraZeneca:

a. Failed to accompany the product with adequate warnings regarding the serious adverse side effects, including diabetes mellitus, ketoacidosis, hyperosmolar coma, death, hyperglycemia, weight gain, glucose dysregulation, hyperlipidemia, hypertriglyceridemia, neuroleptic malignant syndrome and tardive dyskinesia associated with the use of Seroquel;

b. Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Seroquel;

c. Failed to provide adequate training and instruction to medical care providers for appropriate use of Seroquel;

d. Failed to adequately warn Plaintiff prior to actively encouraging the sale of Seroquel, either directly or indirectly (through the prescribing physician), orally or in writing, about the following:

i. The need to take a complete medical history of the patient prior to ingesting Seroquel;

ii. the need for a battery of diagnostic tests to be performed on the patient prior to ingesting Seroquel to discover risk factors and help prevent potentially fatal side effects; and

iii. the need for comprehensive, regular medical monitoring to ensure early discovery of hyperglycemia, diabetes, weight gain, hyperlipidemia, hypertriglyceridemia, pancreatitis, and other potentially fatal side effects;

e. Failed to adequately warn that the risks associated with the ingestion of Seroquel exceeded the risks of other comparable forms of medication for schizophrenia or bipolar mania;

f. Failed to adequately warn about the increased danger and potentially fatal relationship in combining use of Seroquel with various other drugs or use with certain identifiable disorders;

g. Exaggerated the benefits and downplayed the risks of Seroquel in a deceptive manner and in a manner lacking fair balance;

h. Recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, or concealed material facts regarding the safety and efficacy of Seroquel from prescribing physicians and the consuming public, and, had prescribing physicians and the consuming public known of such facts, the drugs would never have been prescribed to, or used by, Plaintiff;

i. Remained silent despite their knowledge of the growing acceptance by the public and physicians of misinformation and misrepresentations regarding both the safety and efficacy of atypical antipsychotics in general and Seroquel in particular, and did so because the prospect of huge profits outweighed health and safety issues, all to the injury and detriment of Plaintiff;

j. Failed to perform their post-manufacturing and continuing duty to warn which arose when they knew, or with reasonable certainty should have known, that Seroquel was being prescribed in a fatal or injurious combination or manner of for uses for which there were no adequate studies as to safety and efficacy and for which the drug product was not approved;

k. Despite the fact that Defendant AstraZeneca received numerous reports of rapid weight gain, hyperglycemia, diabetes, ketoacidosis,

hyperosmolar coma, death, neuroleptic malignant syndrome, tardive dyskinesia, and other serious adverse events, for Seroquel and other atypical antipsychotic drugs of this class via the spontaneous reporting system and the medical literature prior to and during the time that Plaintiff was ingesting Seroquel, such that Defendant AstraZeneca knew or should have known that a reasonable association existed between Seroquel and said serious adverse events, nonetheless, Defendant AstraZeneca continued to market Seroquel to physicians and consumers, including Plaintiff, without disclosing these adverse events and despite the fact that there were safer alternative methods of treating schizophrenia and bipolar mania;

l. Defendant AstraZeneca, through its marketing department, sales managers, and field sales force, promoted Seroquel for uses beyond its approved indications, offering incentives to doctors to increase prescriptions in order to capture a larger share of the anti-psychotic market.

m. Failed to use reasonable care in the selection, hiring, training and supervision of its employees and agents engaged in marketing, promotion, distribution, and sale of Seroquel;

n. Violated the laws and regulations regarding the labeling, distribution, sale, marketing, and promotion of Seroquel; and

o. Was otherwise careless, negligent, grossly negligent, reckless, and acted with willful and wanton disregard for the rights of Plaintiff.

44. Defendant AstraZeneca knew or should have known that physicians and patients, such as Plaintiff, would rely on the labeling for Seroquel and would foreseeably suffer injury as a result of Defendant AstraZeneca's failure to exercise ordinary care as described above.

45. The aforesaid negligent acts by Defendant AstraZeneca fell below the standard of care of a reasonably prudent pharmaceutical drug manufacturer or distributor.

46. As a direct and proximate result of said acts by Defendant AstraZeneca, Plaintiff has suffered, and will continue to suffer in the future, injuries and damages as described below:

a. serious permanent physical injuries, including diabetes mellitus, pain and mental anguish;

b. loss of enjoyment of life;

c. complications of diabetes such as heart disease, kidney disease, diabetic neuropathy, digestive problems, bladder problems, loss of vision, damage to blood vessels, high cholesterol, difficulty in healing sores, amputation of feet and limbs, stroke, and death;

d. medical attention and care and medical expenses;

e. loss of earnings and/or earning capacity; and

f. need for assistance with the activities of daily living, and other financial expenses.

47. Defendant AstraZeneca's conduct was willful, wanton, and done with intentional or reckless indifference to the rights of Plaintiff and to the public health and safety and the health and safety of Plaintiff and other consumers so as to entitle Plaintiff to an award of punitive damages against Defendant AstraZeneca.

**COUNT II**

**(FRAUD)**

48. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

49. Defendant AstraZeneca knew or should have known that Seroquel was dangerous and not as effective for its purpose as represented, and posed greater risks than disclosed, and was otherwise not as represented, as previously alleged.

50. Despite the fact that Defendant AstraZeneca was under a duty to disclose this information to Plaintiff's physician and to Plaintiff, Defendant AstraZeneca knowingly, and with intent to deceive and defraud consumers, including Plaintiff, made misrepresentations and partial disclosures concerning the nature and quality of Seroquel which Defendant AstraZeneca had a duty to correct because Defendant AstraZeneca was in a superior position to know the true state of the facts about the dangerous and defective nature of Seroquel and its known risks to physicians and Plaintiff. These deliberate and/or intentional misrepresentations and omissions of material facts include but are not limited to:

a. Stating orally, in product labeling, and in marketing and promotional materials that Seroquel was safe and effective for the treatment of

schizophrenia and bipolar mania, which was false and not supported by adequate studies;

b. Stating orally, in product labeling, and in marketing and promotional materials that Seroquel was safer and more effective for the treatment of schizophrenia and bipolar mania than other available drug products which were less expensive, which was false and not supported by adequate studies;

c. Advising physicians through sales and marketing personnel that Seroquel was safe and effective for the treatment of conditions and symptoms for which it was not approved and for which there were not adequate studies of safety and efficacy;

d. Suppressing, failing to disclose and mischaracterizing the known risks of rapid weight gain, hyperglycemia, hyperlipidemia, diabetes mellitus, diabetic ketoacidosis, hyperosmolar coma, death, neuroleptic malignant syndrome, and tardive dyskinesia due to ingestion of Seroquel, which were known to Defendant AstraZeneca through spontaneous reports and studies published in the medical literature;

e. Concealing the fact that Seroquel was required by the responsible Japanese regulatory agency to carry a warning of the risk of hyperglycemia and diabetes and that patients should be monitored for these conditions and the drug stopped if signs or symptoms appeared;

f. Omitting material information showing that Seroquel was no more effective than other anti-psychotic drugs already available on the market;

g. Failing to timely and fully disclose the complete and actual results of all clinical tests and studies related to Seroquel;

h. Failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical and clinical testing had not been done;

i. Downplaying or even denying to practitioners, both orally and in written promotional materials, that Seroquel and other drugs in this class can and do cause rapid weight gain, hyperglycemia, hyperlipidemia, diabetes mellitus, diabetic ketoacidosis, and complications and death therefrom, contrary to information placed in the product labeling at the direction of the FDA;

j. Failing to advise prescribers and consumers of the need to take a complete medical history prior to prescribing or using Seroquel and to monitor patients for blood sugar levels from labeling and promotional materials;

k. Failing to disclose that clinical pre-marketing studies for Seroquel were conducted with limited numbers of patients, in limited populations, for short periods of use of only a few weeks, or with lower doses of Seroquel, and that Seroquel had not been adequately

tested for safety and efficacy in children, the elderly, patients with pre-existing medical conditions, or in conjunction with other medications; and then encouraging use for patients in those populations or, knowing that the drugs were being used in that way, failing to warn practitioners of the risks of doing so;

l. Failing to disclose that the drop-out rate with patients on Seroquel was among the highest of any antipsychotic medication, an indication of lack of effectiveness or intolerability or both;

m. Failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done;

n. Making these misrepresentations concerning the safety, efficacy and benefits of Seroquel as detailed in this Complaint without full and adequate disclosure of the underlying facts which rendered such statements false and misleading; and

o. Failing to include the aforesaid information in "Dear Doctor" or "Dear Healthcare Provider" letters and other correspondence with practitioners;

p. Failing to include the aforesaid information in marketing and promotional materials given or shown to practitioners; and

q. Failing to include the aforesaid information in the product labeling or package inserts.

51. Neither Plaintiff nor her doctors knew or could have learned the material facts and important information Defendant AstraZeneca omitted and suppressed. The facts and information suppressed and concealed by Defendant AstraZeneca were material, and of such a nature that the suppression and concealment of such facts caused, contributed to, and/or was a substantial factor in the decision of Plaintiff's physician to prescribe, and of Plaintiff to take, Seroquel.

52. Defendant AstraZeneca knew or should have known that Plaintiff's physician and Plaintiff were relying on Defendant's fraudulent misrepresentations and omissions of material facts.

53. As a direct and proximate result of Defendant AstraZeneca's' fraud, suppression, and omission of material facts, Plaintiff acted to Plaintiff's detriment in purchasing and ingesting Seroquel, which Plaintiff would not have purchased or ingested had Plaintiff been told the truth, and should be reimbursed what Plaintiff spent.

54. As a direct and proximate result of said acts by Defendant AstraZeneca, Plaintiff has suffered injuries and damages as described herein.

**COUNT III**

**STRICT PRODUCT LIABILITY (FAILURE TO WARN)**

55. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

56. The Seroquel manufactured and/or supplied by Defendant AstraZeneca was and is unaccompanied by proper warnings regarding all known adverse side effects and the comparative severity and duration of such adverse effects. The warnings given

did not and do not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects.

57. Defendant AstraZeneca failed to perform adequate testing, which would have shown that Seroquel possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made with respect to the use of the drugs. Had the testing been adequately performed, Seroquel would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the drugs.

58. As a direct and proximate result of the failure of Defendant AstraZeneca to conduct adequate testing and to furnish an adequate warning to physicians and consumers including Plaintiff and Plaintiff's doctors, the Seroquel manufactured and/or distributed and/or supplied by Defendant AstraZeneca, at the time it left Defendant AstraZenca's hands, was unreasonably dangerous and defective.

59. Despite this defect, Defendant AstraZeneca continued to aggressively promote Seroquel to physicians, including Plaintiff's physician and to consumers, including Plaintiff.

60. As a direct and proximate result of the defective condition of Seroquel, as manufactured and/or supplied and/or distributed by Defendant AstraZeneca, Plaintiff has suffered injuries and damages as described herein.

**COUNT IV**

**STRICT PRODUCT LIABILITY**

**(RESTATEMENT SECOND OF TORTS §402A (1965))**

61. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

62. The Seroquel manufactured and/or distributed and/or supplied by Defendant AstraZeneca was not altered prior to use and was defective in design or formulation in that when it left the hands of Defendant AstraZeneca, the foreseeable risks exceeded the benefits associated with the design or formulation.

63. Alternatively, the Seroquel manufactured, distributed and/or supplied by Defendant AstraZeneca was defective in design or formulation in that when said drug product left the hands of said Defendant, it was unreasonably dangerous, was more dangerous than an ordinary consumer would expect, and was more dangerous than other anti-psychotic drugs available at that time.

64. There existed, at all times material hereto, safer alternative medications.

65. As a direct and proximate result of the defective condition of Seroquel, Plaintiff has suffered injuries and damages as described herein.

**COUNT V**

**BREACH OF EXPRESS WARRANTY**

66. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

67. Defendant AstraZeneca expressly warranted in the product labeling and, on information and belief, in promotional materials that Seroquel was safe and effective for the treatment of schizophrenia and bipolar mania, based on adequate clinical studies and that it was "well-tolerated."

68. Defendant AstraZeneca failed to conform to these express representations because Seroquel is not safe or effective and possesses a high risk of serious, life-threatening side effects, including those suffered by Plaintiff.

69. Plaintiff has given reasonable notice to Defendant AstraZeneca of its breach of express and implied warranties.

70. As a direct and proximate result of said breach of warranty, Plaintiff has suffered injuries and damages as described herein.

**COUNT VI**

**BREACH OF IMPLIED WARRANTY**

71. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

72. At the time Defendant AstraZeneca marketed, sold and distributed Seroquel for use by Plaintiff and other consumers, said Defendant knew of the use for which Seroquel was intended and impliedly warranted Seroquel to be of merchantable quality and safe and fit for such use.

73. Plaintiff and her physician reasonably relied upon the skill and judgment of Defendant AstraZeneca as to whether Seroquel was of merchantable quality and safe and fit for its intended use.

74. Contrary to such implied warranties, Seroquel was not of merchantable quality or safe or fit for its intended use because Seroquel was and is unreasonably dangerous and unfit for the ordinary or particular purposes for which it was used as described above.

75. Plaintiff has given reasonable notice to Defendant AstraZeneca of its breach of express and implied warranties.

76. As a direct and proximate result of said breach of warranty, Plaintiff has suffered injuries and damages as described herein.

**COUNT VII**

**CONCEALMENT, SUPPRESSION, OR OMISSION OF MATERIAL FACTS**

77. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

78. Defendant AstraZeneca had a post-manufacturing and continuing duty to warn, which arose when they knew, or with reasonable care should have known, that adverse events associated with Seroquel were serious and sometimes fatal.

79. Defendant AstraZeneca knew or should have known (or would have known had appropriate testing and/or safety monitoring been done) that use of Seroquel caused serious and potentially life-threatening side effects of diabetes.

80. Defendant AstraZeneca omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of Seroquel, including but not limited to the risks of diabetes mellitus and other injuries. Further, said Defendant

purposely downplayed and understated the serious nature of the risks associated with Seroquel use in order to increase the sales of the drug product.

81. Defendant AstraZeneca falsely and deceptively misrepresented or knowingly omitted, suppressed, or concealed facts of such materiality that Seroquel would never have been approved, no reasonable physician would have prescribed Seroquel to Plaintiff, and Plaintiff would not have ingested Seroquel if they had known about the concealed facts.

82. Defendant AstraZeneca engaged in calculated silence, despite their knowledge of the growing public acceptance of misinformation and misrepresentations regarding both the safety and efficacy of the use of Seroquel, and did so because the prospect of significant future profits caused them to ignore concerns regarding health and safety issues, all to the significant detriment of the public, including the Plaintiff.

83. Safer and less expensive anti-psychotics were available to patients being treated with Seroquel.

84. Defendant AstraZeneca's actions, as set forth herein, constitute knowing omission, suppression or concealment of material facts, made with the knowledge and intent that doctors and their patients, including Plaintiff, would rely upon such concealment, suppression or omission in connection with the prescribing and use of Seroquel.

85. In fact, Plaintiff, directly and/or through Plaintiff's prescribing physician, was induced by the Defendant AstraZeneca's omission, suppression and concealment to use Seroquel.

86. As a direct and proximate result of the conduct of Defendant AstraZeneca as described herein, the Plaintiff has suffered injuries and damages as described herein.

WHEREFORE, Plaintiff Alice Gevarter demands joint and several relief as to all Defendants as follows:

(a) General and special compensatory damages in excess of $75,000.00 for personal injury, permanent physical injury, mental anguish, emotional distress, loss of enjoyment of life, and economic loss;

(b) Interest from 2004;

(c) Punitive damages against Defendants for their reckless, willful and wanton conduct;

(d) Attorneys' fees and costs; and

(e) Such other remedies as this Honorable Court may deem just and appropriate.

DATED: May 15, 2008

Respectfully submitted,

Mark P. Robinson, Jr.

Mark P. Robinson, Jr., SBN 054426
Karen Barth Menzies, SBN 180234
ROBINSON CALCAGIE & ROBINSON
620 Newport Center Drive
Seventh Floor
Newport Beach, CA 92660
949 720 1288
949 720 1292 (fax)
mrobinson@rcrlaw.net
kbmezies@rcrlaw.net

D. Renee Baggett, Esq.
Bryan F. Aylstock, Esq.
Aylstock, Witkin, Kreis & Overholtz, PLLC
803 N. Palafox Street
Pensacola, FL 32501
Telephone: (850) 202-1010
Facsimile: (850) 916-7449

*Attorneys for Plaintiff*

**DEMAND FOR JURY TRIAL**

Demand is hereby made for a trial by jury.

DATED: May 15, 2008

Mark P. Robinson, Jr., SBN 054426
Karen Barth Menzies, SBN 180234
ROBINSON CALCAGIE & ROBINSON
620 Newport Center Drive
Seventh Floor
Newport Beach, CA 92660
949 720 1288
949 720 1292 (fax)
mrobinson@rcrlaw.net
kbmezies@rcrlaw.net

D. Renee Baggett, Esq.
Bryan F. Aylstock, Esq.
Aylstock, Witkin, Kreis & Overholtz, PLLC
803 N. Palafox Street
Pensacola, FL 32501
Telephone: (850) 202-1010
Facsimile: (850) 916-7449

*Attorneys for Plaintiff*