Catherine Valerio Barrad (SBN 168897)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600
cbarrad@sidley.com

Attorneys for Defendants
AstraZeneca Pharmaceuticals LP and AstraZeneca LP

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE GEVARTER, <br><br> Plaintiff, <br><br> v. <br><br> ASTRAZENECA PHARMACEUTICALS LP and ASTRAZENECA LP, <br><br> Defendants. | Civil Action No. 3:08-cv-02493-EDL <br><br> **ANSWER AND AFFIRMATIVE AND/OR SEPARATE DEFENSES OF ASTRAZENECA PHARMACEUTICALS LP AND ASTRAZENECA LP TO PLAINTIFF'S COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP (hereinafter referred to collectively as "AstraZeneca") answer Plaintiff's Complaint as follows:

1

**ANSWER**
3:08-cv-02493-EDL

## INTRODUCTION

1.     Plaintiff, by undersigned counsel, hereby institutes this Complaint against AstraZeneca Pharmaceuticals LP and AstraZeneca LP ("Defendants").  This case involves the antipsychotic drug Seroquel (also known as quetiapine fumarate), designed, formulated, promoted, sold and distributed by Defendants in the United States.  Seroquel has caused a high incidence of diabetes, hyperglycemia, pancreatitis, ketoacidosis and diabetic comas, as well as other severe and permanent injuries.

**ANSWER**:  AstraZeneca admits that pursuant to approval by the United States Food and Drug Administration ("FDA"), it manufactures, markets, distributes, and sells SEROQUEL® (quetiapine fumarate) for prescription by licensed physicians in the United States.  AstraZeneca further admits that there have been reports of diabetes and other adverse events in people with schizophrenia and other ailments who were treated with SEROQUEL®, but denies that SEROQUEL® causes diabetes or complications from diabetes.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 1.

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of a state which is different from the state where the Defendants are incorporated and have their principal places of business, and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).  These claims are subject to *Seroquel Products Liability Litigation*, MDL No. 1769, assigned to the Honorable Anne C. Conway, United States District Court for the Middle District of Florida.

**ANSWER**:  AstraZeneca states that the allegations of paragraph 2 constitute legal conclusions to which no response is required.  To the extent that the allegations regarding jurisdiction over AstraZeneca are construed as factual

1    allegations directed to AstraZeneca, it denies that AstraZeneca Pharmaceuticals LP
2    and AstraZeneca LP are corporations and admits that AstraZeneca Pharmaceuticals
3    LP and AstraZeneca LP are Delaware limited partnerships with their principal places
4    of business in Delaware.  AstraZeneca states that it lacks knowledge or information
5    sufficient to form a belief as to the truth of the allegations of paragraph 2 regarding
6    Plaintiff's citizenship, and therefore denies same.   AstraZeneca admits that Plaintiff
7    alleges that the amount in controversy exceeds $75,000, exclusive of interests and
8    costs.  AstraZeneca further admits that this Court has subject matter jurisdiction over
9    this action pursuant to 28 U.S.C. § 1332(a)(1).  AstraZeneca admits that on July 6,
10   2006, the Judicial Panel on Multidistrict Litigation issued a transfer order establishing
11   MDL Proceeding No. 1769, titled *In re Seroquel Products Liability Litigation*, which
12   coordinated for consolidated pretrial proceedings federal litigation involving
13   AstraZeneca's prescription medication SEROQUEL® in the U.S. District Court for
14   the Middle District of Florida before the Honorable Anne C. Conway.   AstraZeneca
15   denies any remaining or inconsistent allegations of paragraph 2.

16          3.      Venue is proper within this District pursuant to 28 U.S.C. § 1391
17   because Defendants sell and distribute their products, including Seroquel, in
18   California and as such, have purposely availed themselves of the privilege of
19   conducting activities within California.  Defendants have thus conducted substantial
20   business in this District and are amenable to suit here.

21          **ANSWER**:  AstraZeneca states that the allegations of paragraph 3
22   constitute legal conclusions to which no response is required.  To the extent that the
23   allegations regarding venue are construed as factual allegations directed to
24   AstraZeneca, it states that the phrase "substantial business" is vague and ambiguous.
25   Accordingly, AstraZeneca states that it lacks knowledge or information sufficient to

**ANSWER**
3:08-cv-02493-EDL

form a belief as to the truth of the allegations of paragraph 3 pertaining to same, and therefore denies same.  AstraZeneca admits that, pursuant to approval by the FDA, it sells and distributes SEROQUEL® for prescription by licensed physicians in the United States, including the State of California.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 3.

## PARTIES

**A.    PLAINTIFF**

4.    Plaintiff Alice Gevarter is a citizen of City of Hayward, Alameda County, California and was injured as a result of taking Seroquel.

**ANSWER**:  AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff is a citizen of California and that Plaintiff took SEROQUEL®, and therefore denies same. AstraZeneca denies any remaining or inconsistent allegations of paragraph 4.

**B.    DEFENDANTS**

5.    Defendant AstraZeneca Pharmaceuticals LP is a Delaware limited partnership with its principal place of business in Delaware.  At all times mentioned herein Defendant AstraZeneca Pharmaceuticals LP was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing Seroquel throughout the United States, including Minnesota and California.  Defendant AstraZeneca Pharmaceuticals LP does business by agent in California and, on information and belief, at all times relevant, advertised, marketed, promoted, sold and/or distributed Seroquel in California.  Defendant AstraZeneca Pharmaceuticals LP is the United States Subsidiary of AstraZeneca PLC, and was created as a result of the union of

1         **ANSWER**[1]:  AstraZeneca admits that AstraZeneca Pharmaceuticals LP

2    is a Delaware limited partnership with its principal place of business in Delaware.

3    AstraZeneca further admits that, pursuant to approval by the FDA, it tests,

4    manufactures, labels, markets, promotes, advertises, and distributes SEROQUEL® for

5    prescription by licensed physicians in the United States, including the states of

6    Minnesota and California.  AstraZeneca states that AstraZeneca plc is a U.K. public

7    limited company headquartered in London, and that AstraZeneca plc was formed in

8    1999 as a result of the merger between Zeneca Group plc and Astra AB.  AstraZeneca

9    denies any remaining or inconsistent allegations of paragraph 5.

10        Procedure will be sent to the following AstraZeneca representative:

11   Paulette Hendrix, AstraZeneca Pharmaceuticals LLP, Law Department (FOP3), 1800

12   Concord Pike, Wilmington, DE  19850.

13        **ANSWER:**  AstraZeneca states that the statements of this unnumbered

14   paragraph do not propound an allegation.  To the extent the statements of this

15   unnumbered paragraph are construed as factual allegations directed to AstraZeneca,

16   AstraZeneca states that the allegations of the unnumbered paragraph are vague and

17

---

18   [1] Page three of the Complaint served on AstraZeneca, and which is available on the

19   electronic docket for the United States District Court for the Northern District of

20   California, appears to be missing.  The result is that the allegations of paragraphs five

     and seven of Plaintiff's Complaint have been truncated, and that the allegations of

21   paragraph six are missing altogether.  AstraZeneca responds only to those allegations

22   of paragraph 5 and what is presumably paragraph 7 that appear in the as-filed and

     served version of Plaintiff's Complaint.  AstraZeneca makes no response to those

23   allegations that are missing from the as-filed Complaint.  AstraZeneca states,

     however, that AstraZeneca Pharmaceuticals LP is a citizen of Delaware, New York,

24   and Sweden for purposes of diversity jurisdiction and that AstraZeneca LP is a citizen

25   of Delaware, New York, New Jersey, and Sweden for purposes of diversity

26   jurisdiction,

27        **ANSWER**

28        3:08-cv-02493-EDL

ambiguous.  Accordingly, AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the unnumbered paragraph, and therefore denies same.

8.    When the word "Defendants" or "AstraZeneca" is used herein, it is meant to refer to the Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP, mentioned in the style of this Complaint, which are liable for Plaintiff's injuries.

**ANSWER:**  AstraZeneca denies that it is responsible for Plaintiff's alleged injuries.

9.    Defendants are, and were at all relevant times, duly authorized to conduct business in the State of California.

**ANSWER:**  AstraZeneca admits that, pursuant to approval by the FDA, and at all times relevant to this litigation, it markets, advertises, and distributes SEROQUEL® for prescription by licensed physicians in the State of California and elsewhere in the United States.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 9.

10.    Defendants have transacted business in the State of California.

**ANSWER:**  AstraZeneca admits that, pursuant to approval by the FDA, it markets, advertises, and distributes SEROQUEL® for prescription by licensed physicians in the State of California and elsewhere in the United States.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 10.

11.    Defendants regularly conduct and solicit business within the State of California.

**ANSWER:**  AstraZeneca admits that, pursuant to approval by the FDA, it markets, advertises, and distributes SEROQUEL® for prescription by licensed physicians in the State of California, and elsewhere in the United States.  AstraZeneca

1    denies any remaining or inconsistent allegations of paragraph 11.

2          12.    At al relevant times, Defendants, through their agents, servants and

3    employees, were the designers, manufacturers, marketers, advertisers, distributors, and

4    sellers of Seroquel, also known as quietapine fumarate.

5          **ANSWER:**  AstraZeneca admits that, pursuant to approval by the FDA,

6    it manufactures, markets, advertises, and distributes SEROQUEL® for prescription by

7    licensed physicians in the United States.  AstraZeneca further admits that

8    SEROQUEL® is the trade name for the compound "quietapine fumarate."

9    AstraZeneca denies any remaining or inconsistent allegations of paragraph 12.

10         13.    Defendants have substantial revenue from goods used or consumed

11   in the State of California.

12         **ANSWER:**  AstraZeneca states that the allegations of paragraph 13 are

13   conclusory, vague, and ambiguous.  Accordingly, AstraZeneca states that it lacks

14   knowledge or information sufficient to form a belief as to the truth of the allegations

15   of paragraph 13, and therefore denies same.

16         14.    Defendants expected, or should have expected, that their actions

17   could or would have consequences within the State of California.

18         **ANSWER:**  AstraZeneca denies the allegations of paragraph 14.

19                          **CONDITIONS PRECEDENT**

20         15.    All conditions precedent have been performed or have occurred.

21         **ANSWER:**  AstraZeneca states that the allegations of paragraph 15

22   constitute legal conclusions to which no response is required.  To the extent the

23   allegations of paragraph 15 are construed as factual allegations directed to

24   AstraZeneca, AstraZeneca states that it lacks knowledge or information sufficient to

25   form a belief as to the truth of the allegations of paragraph 15, and therefore denies

26

27

28

same.

## NATURE OF THE CASE

16.    Plaintiff Alice Gevarter was prescribed and ingested the prescription drug Seroquel (quetiapine fumarate), manufactured, distributed and/or sold by Defendants.

**ANSWER:**  AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16 that Plaintiff "was prescribed and ingested" SEROQUEL®, and therefore denies same. AstraZeneca admits that, pursuant to approval by the FDA, it manufactures and distributes SEROQUEL® for prescription by licensed physicians in the United States. AstraZeneca denies any remaining or inconsistent allegations of paragraph 16.

17.    Plaintiff continued taking Seroquel until on or about April 2007. As a result of the ingestion of Seroquel, Plaintiff developed diabetes mellitus on or about May 2006, and was permanently injured.

**ANSWER:**  AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17 and therefore denies same.  AstraZeneca specifically denies that SEROQUEL® caused Plaintiff to develop diabetes.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 17.

## COUNT I
## (NEGLIGENCE)

18.    The allegations previously set forth in paragraphs 1 through 17 are re-alleged and incorporated by reference within this count.

**ANSWER:**  AstraZeneca incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

1    19.    From on or about 1997 through today, Defendant AstraZeneca

2 manufactured, created, designed, tested, labeled, sterilized, packaged, licensed,

3 distributed, supplied, marketed, sold, and advertised and placed in the stream of

4 commerce the pharmaceutical drug product "quetiapine fumarate" which was sold in

5 the United States under the trade name "Seroquel."

6    **ANSWER:**  AstraZeneca admits that, pursuant to approval by the FDA it

7 manufactures, tests, labels, packages, distributes, markets, promotes, and sells

8 SEROQUEL® (quetiapine fumarate) for prescription by licensed physicians in the

9 United States.  AstraZeneca denies any remaining or inconsistent allegations of

10 paragraph 19.

11    20.    Defendant AstraZeneca had a duty to exercise reasonable care in

12 the design, manufacture, sale, and distribution of Seroquel, including a duty to assure

13 that Seroquel did not cause users to suffer from unreasonable, dangerous side effects

14 when used alone or in foreseeable combination with other drugs, and a duty to warn

15 physicians and patients of any serious risks associated with Seroquel.

16    **ANSWER:**  AstraZeneca states that the allegations of paragraph 20

17 constitute legal conclusions to which no response is required.  To the extent that the

18 allegations of paragraph 20 are construed as factual allegations directed to

19 AstraZeneca, AstraZeneca states that the allegations of paragraph 20 are conclusory,

20 vague, and ambiguous.  Accordingly, AstraZeneca further states that it lacks

21 knowledge or information sufficient to form a belief as to the truth of the allegations

22 of paragraph 20 pertaining to same, and therefore denies same.  AstraZeneca denies

23 that the allegations of paragraph 20 fully and accurately state its duty under the law,

24 and admits that at all times it complied with its duty under the law.  AstraZeneca

25 denies any remaining or inconsistent allegations of paragraph 20.

26

27

28

9

**ANSWER**
3:08-cv-02493-EDL

21.    The prescription drug Seroquel is an antipsychotic medication belonging to a class of drugs referred to as "atypical" or "second-generation" anti-psychotics.  This class of drugs, including Seroquel, causes an increased risk of rapid weight gain, hyperlipidemia, hypercholesteremia, hyperglycemia, diabetes mellitus, ketoacidosis, seizures, hyperosmolar coma, death, pancreatitis, liver disease, kidney disease, blindness, and other serious side effects including neuroleptic malignant syndrome and tardive dyskinesia, and other serious health problems associated with diabetes, including heart disease, kidney disease, diabetic neuropathy, digestive problems, bladder problems, loss of vision, damage to blood vessels, high cholesterol, difficulty in healing sores, amputation of feet and limbs, stroke, and death.

**ANSWER:**  AstraZeneca admits that SEROQUEL® is an antipsychotic medication and belongs to a class of drugs referred to as "atypical antipsychotics." AstraZeneca further admits that there have been reports of diabetes and other adverse events in people with schizophrenia and other ailments who were treated with SEROQUEL®, but denies that SEROQUEL® causes diabetes or complications from diabetes.  AstraZeneca denies any remaining allegations of paragraph 21 that are directed at AstraZeneca, and specifically denies that SEROQUEL® is responsible for Plaintiff's injuries.  To the extent that the allegations of paragraph 21 are directed to medications other than SEROQUEL®, AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore denies same.

22.    Seroquel is commonly prescribed to patients to aid in the treatment of schizophrenia and manic episodes associated with bipolar I disorder.  The pharmacologic action of these drugs is unknown but is thought to be dependent on their ability to block or moderate the level of dopamine and/or serotonin; chemicals

found in the brain that in excessive amounts may possibly cause abnormal thinking and hallucinations.

**ANSWER:**  AstraZeneca admits that SEROQUEL® is indicated for the treatment of schizophrenia and acute manic episodes associated with Bipolar I disorder by licensed physicians, but states that the allegations of paragraph 22 do not fully and accurately describe the purposes for which physicians prescribe SEROQUEL®.  AstraZeneca further states that the allegations of paragraph 22 do not fully and accurately describe prevailing medical prescribing practices and the state of medical and scientific understanding with respect to the pharmacodynamics of the medication, and therefore denies Plaintiff's allegations pertaining to same.  AstraZeneca further denies any remaining or inconsistent allegations of paragraph 22.

23.    The anti-psychotic drug market is $12 Billion worldwide.  Defendant AstraZeneca viewed the Seroquel as a blockbuster drug with significant projected growth potential.  In 2003, Seroquel reached over $2 Billion in annual sales, and, in 2005, Seroquel reached over $2.8 Billion in annual sales.

**ANSWER:**  AstraZeneca states that it lacks knowledge or information sufficient to for a belief as to the truth of the allegations of paragraph 23 regarding the size of the market for antipsychotic medications, and therefore denies same.  AstraZeneca states that the allegations of paragraph 23 that "AstraZeneca viewed Seroquel as a blockbuster drug with significant projected growth potential" is conclusory, vague, and ambiguous.  Accordingly, AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 pertaining to same, and therefore denies same.  AstraZeneca denies the annual sales allegations of paragraph 23 to the extent that the figures are inconsistent with those reported by AstraZeneca plc in its annual financial statements,

1  which reports are publicly available.  AstraZeneca denies any remaining or

2  inconsistent allegations of paragraph 23.

3          24.    Seroquel was initially marketed by Defendant AstraZeneca as safe

4  and effective for the treatment of schizophrenia, and later for bipolar mania, promising

5  greater effectiveness and fewer side effects than with other available antipsychotics.

6          **ANSWER:**  AstraZeneca admits that, as the FDA has concluded,

7  SEROQUEL® is safe and effective when prescribed and used in accordance with its

8  FDA-approved labeling.  AstraZeneca further admits that, pursuant to approval by the

9  FDA, AstraZeneca markets and distributes SEROQUEL® for prescription by licensed

10  physicians in accordance with the FDA-approved prescribing information.

11  AstraZeneca denies any remaining or inconsistent allegations of paragraph 24.

12          25.    The risk associated with this class of drugs, including Seroquel,

13  and the onset of diabetes is higher than for older, less expensive drugs used to treat

14  schizophrenia.

15          **ANSWER:**  AstraZeneca denies the allegations of paragraph 25 to the

16  extent that they are directed at SEROQUEL®.  To the extent that the allegations of

17  paragraph 25 are directed at medications other than SEROQUEL®, AstraZeneca

18  states that it lacks knowledge or information sufficient to form a belief as to the truth

19  of those allegations, and therefore denies same.

20          26.    The product warnings in effect for Seroquel prior to and during the

21  time period that Plaintiff was taking this drug product were vague, incomplete or

22  otherwise wholly inadequate, both substantively and graphically, to alert prescribing

23  physicians, as well as consumer patients, to the actual risks associated with this drug.

24          **ANSWER:**  AstraZeneca denies the allegations of paragraph 26.

25          27.    Despite the fact that Defendant AstraZeneca knew or should have

26

27

28

---

12

**ANSWER**

3:08-cv-02493-EDL

known that Seroquel was associated with the aforesaid adverse effects, including diabetes mellitus, said Defendant recklessly, negligently, and with willful and wanton indifference to the health and safety of consumers, including Plaintiff, failed to include any warning regarding hyperglycemia, diabetes mellitus, or related conditions until on or after January 2004.  Prior to that time, the label was defective in that it failed to advise prescribing doctors or the public, including Plaintiff, of the need to conduct fasting blood sugar tests before and during treatment and that treatment should be stopped if symptoms of hyperglycemia or diabetes mellitus appeared.  In fact, the January 2004 label is still defective in that it does not contain a black box warning for diabetes mellitus or hyperglycemia, fails to warn physicians that Seroquel should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history of diabetes, and only recommends blood glucose testing for patients with "risk factors" and those who develop "symptoms" of hyperglycemia.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 27.

28.    The marketing and promotional efforts of Defendant AstraZeneca, through its advertisers and sales force, overstated the benefits of Seroquel and minimized and downplayed the risks associated with this drug.  These promotional efforts were made, while fraudulently, willfully and wantonly withholding important safety information from the physicians, the FDA, and the public, specifically, that Defendant AstraZeneca was aware of numerous reports of diabetes associated with the use of these drugs, well beyond the background rate and well beyond the rate for other anti-psychotic agents.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 28.

29.    After Seroquel was introduced to the U.S. market, studies

conducted in Europe and Japan revealed that numerous patients treated with atypical antipsychotics, including Seroquel, experienced a significantly higher incidence of diabetes and hyperglycemia.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 29 are conclusory, vague, and ambiguous, and therefore AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of those allegations and denies same.

30.    Shortly after Defendant AstraZeneca began selling Seroquel, reports of consumers who were using Seroquel suffering from hyperglycemia, hyperlipidemia, acute weight gain, diabetes mellitus, pancreatitis, and other severe diseases and conditions associated with Seroquel began to surface.  Defendant AstraZeneca knew, or was reckless in not knowing, of these reports.  Furthermore, Defendant AstraZeneca was aware of studies and journal articles linking use of Seroquel with these and other severe and permanent hyperglycemia-related adverse events and diseases prior to and during the time that Plaintiff ingested Seroquel.

**ANSWER:**  AstraZeneca admits that, following the FDA's 1997 approval of SEROQUEL® and its subsequent release into the market, there were reports of diabetes and other ailments in people with schizophrenia who were treated with SEROQUEL®, but denies that SEROQUEL® causes diabetes or complications from diabetes.  AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff ingested SEROQUEL®, and therefore denies same.  AstraZeneca denies the remaining allegations of paragraph 30.

31.    In December 2000, an article published in the *British Medical Journal* found no clear evidence that atypical anti-psychotics like Seroquel were more effective or better tolerated than conventional anti-psychotics including Haldol and

1    Thorazine.

2         **ANSWER:**  AstraZeneca states that, upon information and belief, an

3    article comparing the use of typical and atypical antipsychotics in the treatment of

4    schizophrenia was published in a December 2000 issue of the *British Medical*

5    *Journal*, and further states that the article speaks for itself.  AstraZeneca denies any

6    remaining or inconsistent allegations of paragraph 31.

7         32.    By July 2001, Defendant AstraZeneca had received at least 46

8    reports of diabetes mellitus in patients taking Seroquel, including reports in the

9    medical literature, and including at least 21 cases of ketoacidosis or acidosis and 11

10   deaths, and, by the end of 2003, AstraZeneca had received at least 23 more.  Most

11   cases appeared within 6 months of initiating Seroquel therapy.

12        **ANSWER:**  AstraZeneca admits that it has received reports of diabetes

13   and other ailments in people who were treated with SEROQUEL®, but denies that

14   SEROQUEL® causes diabetes or complications from diabetes.  AstraZeneca states

15   that the remaining allegations of paragraph 32 are vague, conclusory, and ambiguous.

16   Accordingly, AstraZeneca lacks knowledge or information sufficient to form a belief

17   as to the truth of those allegations, and therefore denies same.

18        33.    A study of diabetes mellitus with use of atypical neuroleptics in the

19   treatment of schizophrenia, published in 2002, found that the prevalence of diabetes in

20   a large national sample was significantly increased for patients who received

21   quetiapine, compared to typical antipsychotic medication.

22        **ANSWER:**  AstraZeneca states that the allegations of paragraph 33 are

23   vague and ambiguous.  Accordingly, AstraZeneca lacks knowledge or information

24   sufficient to form a belief as to the truth of those allegations, and denies same.

25        34.    In a retrospective case-controlled cohort study of diabetes mellitus

26

27   

**15**

**ANSWER**

3:08-cv-02493-EDL

28

and antipsychotic treatment in the United States, published in 2003, when researchers compared the hazard for those receiving quetiapine to the hazard with respect to the general population, the researchers found the hazard ratio to be nearly double the risk for controls.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 34 are vague and ambiguous.  Accordingly, AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and denies same.

35.    In a study presented at an international conference in 2003, researchers reported that patients taking Seroquel had a significantly increased risk of diabetes compared to those taking older antipsychotic drugs.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 35 are vague and ambiguous.  Accordingly, AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and denies same.

36.    Recently, researchers at the National Institute of Mental Health published a report on atypical antipsychotics, including Seroquel, which found that the majority of patients in each group discontinued their assigned treatment owing to lack of efficacy or intolerable side effects or for other reasons and that the atypicals, including Seroquel, were no more effective than the older, cheaper, and still available conventional antipsychotic perphenazine.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 36 are vague and ambiguous.  Accordingly, AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and denies same.

37.    Upon information and belief, prior to and during the time Plaintiff ingested Seroquel, the Japanese label for Seroquel provided a detailed warning regarding the risks of diabetes associated with Seroquel, and specifically informed

physicians regarding the necessity of medical monitoring of patients on Seroquel.  At the time the Plaintiff ingested Seroquel, Defendant AstraZeneca had not adopted this safer, more accurate label for the U.S. distribution of Seroquel.

**ANSWER:**  AstraZeneca states, upon information and belief, that Japan's Ministry of Health, Labor, and Welfare has required language in the labeling of  SEROQUEL® in Japan relating to diabetes and glucose monitoring, but denies that the Japanese labeling for SEROQUEL® is safer or more accurate than the FDA-approved U.S. labeling for SEROQUEL®.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 37.

38.     Upon information and belief, prior to and during the time of use of Seroquel by Plaintiff, the Japanese label warned specifically of the diabetes risk, prominently in the beginning of the package label stating:

a.     Quetiapine fumarate is contraindicated for use in patients with diabetes or a history of diabetes.

b.     Quetiapine fumarate should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history of diabetes.

c.     Patients receiving quetiapine fumarate should be carefully monitored for symptoms of hyperglycemia, and the drug should be discontinued if such symptoms occur.  The symptoms of severe hyperglycemia include weakness, excessive eating, excessive thirst, and excessive urination.

d.     Physicians should educate patients and their family members about the risk of serious hyperglycemia associated with quetiapine fumarate and how to identify the symptoms of hyperglycemia

**ANSWER:**  AstraZeneca states, upon information and belief, that

17

**ANSWER**
3:08-cv-02493-EDL

1   Japan's Ministry of Health, Labor, and Welfare has required language in the labeling

2   of SEROQUEL® in Japan relating to diabetes and glucose monitoring, but denies

3   that the allegations of paragraph 38 fully and accurately state that warning.

4   AstraZeneca further denies that SEROQUEL® causes diabetes.  AstraZeneca denies

5   any remaining or inconsistent allegations of paragraph 38 and its subparts.

6           39.     In April 2002, the Japanese Health & Welfare Ministry issued

7   emergency safety information regarding the risk of diabetes, diabetic ketoacidosis, and

8   hyperosmolar coma for patients prescribed Seroquel.  On information and belief, prior

9   to that time, Defendant AstraZeneca was involved in discussions with the Japanese

10  agency regarding labeling changes for Seroquel and other atypicals.

11          **ANSWER:**  AstraZeneca states that, upon information and belief,

12  Japan's Ministry of Health, Labor, and Welfare has required language in the labeling

13  of SEROQUEL® in Japan relating to diabetes and glucose monitoring, but denies

14  that the Japanese labeling for SEROQUEL® is safer or more accurate than the FDA-

15  approved U.S. labeling for SEROQUEL®.  AstraZeneca further denies that Plaintiff

16  has accurately characterized the nature of the safety information required by Japan's

17  Ministry of Health, Labor, and Welfare, as well as the nature of any discussions with

18  the Japanese agency regarding labeling changes for SEROQUEL®.  AstraZeneca

19  denies any remaining or inconsistent allegations of paragraph 39.

20          40.     While warning of the association of Seroquel with diabetes,

21  glucose dysregulation, ketoacidosis, weight gain and the need for medical monitoring

22  in Japan, Defendant AstraZeneca failed to provide the same or similar warnings to the

23  public and prescribing physicians in the United States.

24          **ANSWER:**  AstraZeneca states, upon information and belief, that

25  Japan's Ministry of Health, Labor, and Welfare has required language in the labeling

26

                                            **18**

27                                         **ANSWER**
                                       3:08-cv-02493-EDL

28

1    of SEROQUEL® in Japan relating to diabetes and glucose monitoring, but denies

2    that the Japanese labeling for SEROQUEL® is safer or more accurate than the FDA-

3    approved U.S. labeling for SEROQUEL®.  AstraZeneca denies any remaining or

4    inconsistent allegations of paragraph 40.

5             41.    Prior to and during the period of ingestion by Plaintiff,

6    AstraZeneca was aware of studies and reports that confirmed previous studies

7    describing a link between the class of atypical anti-psychotics and diabetes.  These

8    reports, described an increased incidence of diabetes and hyperglycemic-related health

9    issues in patients receiving Seroquel®, compared to patients receiving older anti-

10   psychotics, or even other atypical anti-psychotics.

11            **ANSWER:**  AstraZeneca denies the allegations of paragraph 41.

12            42.    Despite having long possessed this information, Defendant delayed

13   taking action to correct the obvious defect in its product labeling for months, instead

14   haggling with the FDA over the wording of any proposed labeling change, clearly in

15   an effort to avoid any adverse affect from a marketing perspective.  During this

16   period, Defendant did not pass on this information regarding the diabetes risk to

17   physicians or issue new labeling containing specific warnings until approximately

18   January 2004.  Even after Defendant added a warning about hyperglycemia and

19   diabetes mellitus to the labeling for Seroquel, Defendant continued to tell physicians

20   and consumers that it did not believe that Seroquel caused diabetes, and failed to add

21   any warning regarding pancreatitis.  In 2004 the FDA issued a warning letter to

22   Defendant for accompanying the new label with a misleading Dear Doctor letter that

23   downplayed the risk of diabetes and neglected to warn prescribers and patients that

24   patients taking Seroquel needed to be continually monitored for signs and symptoms

25   of diabetes.  Again, in November 2006, the FDA issued another warning letter to

26

27

28

**ANSWER**
3:08-cv-02493-EDL

1    Defendant for distributing false and misleading promotional materials to doctors and

2    institutions regarding the risk of diabetes in users of Seroquel and downplaying the

3    risk

4    **ANSWER:**  AstraZeneca admits that it issued a Dear Health Care

5    Provider Letter on January 30, 2004.  AstraZeneca further admits that on April 22,

6    2004 it issued a second Dear Health Care Provider letter, which included information

7    inadvertently omitted from the January 30, 2004 letter.  AstraZeneca denies Plaintiff's

8    characterization of the 2004 Dear Health Care Provider letters, and specifically denies

9    that AstraZeneca's Dear Health Care Provider letters were "misleading."  AstraZeneca

10    admits that on November 16, 2006 it received a letter from FDA's Division of Drug

11    Marketing, Advertising, and Communications, but denies that Plaintiff has accurately

12    characterized the contents of that letter.  AstraZeneca denies all remaining or

13    inconsistent allegations of paragraph 42.

14          43.    Defendant AstraZeneca was negligent in the design,

15    manufacturing, testing, advertising, marketing, promotion, labeling, warnings given,

16    and sale of Seroquel in that, among other things, Defendant AstraZeneca:

17                a.    Failed to accompany the product with adequate warnings

18    regarding the serious adverse side effects, including diabetes mellitus, ketoacidosis,

19    hyperosmolar coma, death, hyperglycemia, weight gain, glucose dysregulation,

20    hyperlipidemia, hypertriglyceridemia, neuroleptic malignant syndrome and tardive

21    dyskinesia associated with the use of Seroquel;

22                b.    Failed to conduct adequate pre-clinical and clinical testing

23    and post-marketing surveillance to determine the safety of Seroquel;

24                c.    Failed to provide adequate training and instruction to

25    medical care providers for appropriate use of Seroquel;

26

27

28

d.      Failed to adequately warn Plaintiff prior to actively encouraging the sale of Seroquel, either directly or indirectly (through the prescribing physician), orally or in writing, about the following:

i.      The need to take a complete medical history of the patient prior to ingesting Seroquel;

ii.     the need for a battery of diagnostic tests to be performed on the patient prior to ingesting Seroquel to discover risk factors and help prevent potentially fatal side effects; and

iii.    the need for comprehensive, regular medical monitoring to ensure early discovery of hyperglycemia, diabetes, weight gain, hyperlipidemia, hypertriglyceridemia, pancreatitis, and other potentially fatal side effects;

e.      Failed to adequately warn that the risks associated with the ingestion of Seroquel exceeded the risks of other comparable forms of medication for schizophrenia or bipolar mania;

f.      Failed to adequately warn about the increased danger and potentially fatal relationship in combining use of Seroquel with various other drugs or use with certain identifiable disorders;

g.      Exaggerated the benefits and downplayed the risks of Seroquel in a deceptive manner and in a manner lacking fair balance;

h.      Recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, or concealed material facts regarding the safety and efficacy of Seroquel from prescribing physicians and the consuming public, and, had prescribing physicians and the consuming public known of such facts, the drugs would never have been prescribed to, or used by, Plaintiff;

**ANSWER**
3:08-cv-02493-EDL

i.      Remained silent despite their knowledge of the growing acceptance by the public and physicians of misinformation and misrepresentations regarding both the safety and efficacy of atypical antipsychotics in general and Seroquel in particular, and did so because the prospect of huge profits outweighed health and safety issues, all to the injury and detriment of Plaintiff;

j.      Failed to perform their post-manufacturing and continuing duty to warn which arose when they knew, or with reasonable certainty should have known, that Seroquel was being prescribed in a fatal or injurious combination or manner of for uses for which there were no adequate studies as to safety and efficacy and for which the drug product was not approved;

k.      Despite the fact that Defendant AstraZeneca received numerous reports of rapid weight gain, hyperglycemia, diabetes, ketoacidosis, hyperosmolar coma, death, neuroleptic malignant syndrome, tardive dyskinesia, and other serious adverse events, for Seroquel and other atypical antipsychotic drugs of this class via the spontaneous reporting system and the medical literature prior to and during the time that Plaintiff was ingesting Seroquel, such that Defendant AstraZeneca knew or should have known that a reasonable association existed between Seroquel and said serious adverse events, nonetheless, Defendant AstraZeneca continued to market Seroquel to physicians and consumers, including Plaintiff, without disclosing these adverse events and despite the fact that there were safer alternative methods of treating schizophrenia and bipolar mania;

l.      Defendant AstraZeneca, through its marketing department, sales managers, and field sales force, promoted Seroquel for uses beyond its approved indications, offering incentives to doctors to increase prescriptions in order to capture a larger share of the anti-psychotic market.

22

**ANSWER**
3:08-cv-02493-EDL

1        m.     Failed to use reasonable care in the selection, hiring, training and

2 supervision of its employees and agents engaged in marketing, promotion,

3 distribution, and sale of Seroquel;

4        n.     Violated the laws and regulations regarding the labeling,

5 distribution, sale, marketing, and promotion of Seroquel; and

6        o.     Was otherwise careless, negligent, grossly negligent, reckless, and

7 acted with willful and wanton disregard for the rights of Plaintiff.

8        **ANSWER:**  AstraZeneca denies the allegations of paragraph 43,

9 including all its subparts.

10        44.     Defendant AstraZeneca knew or should have known that

11 physicians and patients, such as Plaintiff, would rely on the labeling for Seroquel and

12 would foreseeably suffer injury as a result of Defendant AstraZeneca's failure to

13 exercise ordinary care as described above.

14        **ANSWER:**  AstraZeneca denies the allegations of paragraph 44.

15        45.     The aforesaid negligent acts by Defendant AstraZeneca fell below

16 the standard of care of a reasonably prudent pharmaceutical drug manufacturer or

17 distributor.

18        **ANSWER:**  AstraZeneca denies the allegations of paragraph 45.

19        46.     As a direct and proximate result of said acts by Defendant

20 AstraZeneca, Plaintiff has suffered, and will continue to suffer in the future, injuries

21 and damages as described below:

22        a.     serious permanent physical injuries, including diabetes mellitus,

23 pain and mental anguish;

24        b.     loss of enjoyment of life;

25        c.     complications of diabetes such as heart disease, kidney disease,

26

27

28

diabetic neuropathy, digestive problems, bladder problems, loss of vision, damage to blood vessels, high cholesterol, difficulty in healing sores, amputation of feet and limbs, stroke, and death;

       d.     medical attention and care and medical expenses;

       e.     loss of earnings and/or earning capacity; and

       f.     need for assistance with the activities of daily living, and other financial expenses.

     **ANSWER:**  AstraZeneca denies the allegations of paragraph 46, including all its subparts.

     47.    Defendant AstraZeneca's conduct was willful, wanton, and done with intentional or reckless indifference to the rights of Plaintiff and to the public health and safety and the health and safety of Plaintiff and other consumers so as to entitle Plaintiff to an award of punitive damages against Defendant AstraZeneca.

     **ANSWER:**  AstraZeneca denies the allegations of paragraph 47.

**COUNT II**

**(FRAUD)**

     48.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

     **ANSWER:**  AstraZeneca incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

     49.    Defendant AstraZeneca knew or should have known that Seroquel was dangerous and not as effective for its purpose as represented, and posed greater risks than disclosed, and was otherwise not as represented, as previously alleged.

     **ANSWER:**  AstraZeneca denies the allegations of paragraph 49.

     50.    Despite the fact that Defendant AstraZeneca was under a duty to

24

**ANSWER**
3:08-cv-02493-EDL

disclose this information to Plaintiff's physician and to Plaintiff, Defendant AstraZeneca knowingly, and with intent to deceive and defraud consumers, including Plaintiff, made misrepresentations and partial disclosures concerning the nature and quality of Seroquel which Defendant AstraZeneca had a duty to correct because Defendant AstraZeneca was in a superior position to know the true state of the facts about the dangerous and defective nature of Seroquel and its known risks to physicians and Plaintiff. These deliberate and/or intentional misrepresentations and omissions of material facts include but are not limited to:

a.      Stating orally, in product labeling, and in marketing and promotional materials that Seroquel was safe and effective for the treatment of schizophrenia and bipolar mania, which was false and not supported by adequate studies;

b.      Stating orally, in product labeling, and in marketing and promotional materials that Seroquel was safer and more effective for the treatment of schizophrenia and bipolar mania than other available drug products which were less expensive, which was false and not supported by adequate studies;

c.      Advising physicians through sales and marketing personnel that Seroquel was safe and effective for the treatment of conditions and symptoms for which it was not approved and for which there were not adequate studies of safety and efficacy;

d.      Suppressing, failing to disclose and mischaracterizing the known risks of rapid weight gain, hyperglycemia, hyperlipidemia, diabetes mellitus, diabetic ketoacidosis, hyperosmolar coma, death, neuroleptic malignant syndrome, and tardive dyskinesia due to ingestion of Seroquel, which were known to Defendant AstraZeneca through spontaneous reports and studies published in the medical literature;

---

25

**ANSWER**
3:08-cv-02493-EDL

e.    Concealing the fact that Seroquel was required by the responsible Japanese regulatory agency to carry a warning of the risk of hyperglycemia and diabetes and that patients should be monitored for these conditions and the drug stopped if signs or symptoms appeared;

f.    Omitting material information showing that Seroquel was no more effective than other anti-psychotic drugs already available on the market;

g.    Failing to timely and fully disclose the complete and actual results of all clinical tests and studies related to Seroquel;

h.    Failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical and clinical testing had not been done;

i.    Downplaying or even denying to practitioners, both orally and in written promotional materials, that Seroquel and other drugs in this class can and do cause rapid weight gain, hyperglycemia, hyperlipidemia, diabetes mellitus, diabetic ketoacidosis, and complications and death therefrom, contrary to information placed in the product labeling at the direction of the FDA;

j.    Failing to advise prescribers and consumers of the need to take a complete medical history prior to prescribing or using Seroquel and to monitor patients for blood sugar levels from labeling and promotional materials;

k.    Failing to disclose that clinical pre-marketing studies for Seroquel were conducted with limited numbers of patients, in limited populations, for short periods of use of only a few weeks, or with lower doses of Seroquel, and that Seroquel had not been adequately tested for safety and efficacy in children, the elderly, patients with pre-existing medical conditions, or in conjunction with other medications; and then encouraging use for patients in those populations or, knowing that the drugs were being used in that way, failing to warn practitioners of the risks of doing so;

l.    Failing to disclose that the drop-out rate with patients on Seroquel was among the highest of any antipsychotic medication, an indication of lack of effectiveness or intolerability or both;

m.    Failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done;

n.    Making these misrepresentations concerning the safety, efficacy and benefits of Seroquel as detailed in this Complaint without full and adequate disclosure of the underlying facts which rendered such statements false and misleading; and

o.    Failing to include the aforesaid information in "Dear Doctor" or "Dear Healthcare Provider" letters and other correspondence with practitioners;

p.    Failing to include the aforesaid information in marketing and promotional materials given or shown to practitioners; and

q.    Failing to include the aforesaid information in the product labeling or package inserts.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 50, including all its subparts.

51.    Neither Plaintiff nor her doctors knew or could have learned the material facts and important information Defendant AstraZeneca omitted and suppressed.  The facts and information suppressed and concealed by Defendant AstraZeneca were material, and of such a nature that the suppression and concealment of such facts caused, contributed to, and/or was a substantial factor in the decision of Plaintiff's physician to prescribe, and of Plaintiff to take, Seroquel.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 51.

52.    Defendant AstraZeneca knew or should have known that Plaintiff's

physician and Plaintiff were relying on Defendant's fraudulent misrepresentations and omissions of material facts.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 52.

53.    As a direct and proximate result of Defendant AstraZeneca's fraud, suppression, and omission of material facts, Plaintiff acted to Plaintiff's detriment in purchasing and ingesting Seroquel, which Plaintiff would not have purchased or ingested had Plaintiff been told the truth, and should be reimbursed what Plaintiff spent.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 53.

54.    As a direct and proximate result of said acts by Defendant AstraZeneca, Plaintiff has suffered injuries and damages as described herein.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 54.

## COUNT III

## STRICT PRODUCT LIABILITY (FAILURE TO WARN)

55.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

**ANSWER:**  AstraZeneca incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

56.    The Seroquel manufactured and/or supplied by Defendant AstraZeneca was and is unaccompanied by proper warnings regarding all known adverse side effects and the comparative severity and duration of such adverse effects. The warnings given did not and do not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects.

**ANSWER:**  AstraZeneca admits that, pursuant to approval by the FDA,

28

1   it manufactures and sells SEROQUEL® for prescription by licensed physicians in the

2   United States.  AstraZeneca denies the remaining allegations of paragraph 56.

3           57.    Defendant AstraZeneca failed to perform adequate testing, which

4   would have shown that Seroquel possessed serious potential side effects with respect

5   to which full and proper warnings accurately and fully reflecting symptoms, scope and

6   severity should have been made with respect to the use of the drugs.  Had the testing

7   been adequately performed, Seroquel would have been allowed to enter the market, if

8   at all, only with warnings that would have clearly and completely identified the risks

9   and dangers of the drugs.

10          **ANSWER:**  AstraZeneca denies the allegations of paragraph 57.

11          58.    As a direct and proximate result of the failure of Defendant

12  AstraZeneca to conduct adequate testing and to furnish an adequate warning to

13  physicians and consumers including Plaintiff and Plaintiff's doctors, the Seroquel

14  manufactured and/or distributed and/or supplied by Defendant AstraZeneca, at the

15  time it left Defendant AstraZeneca's hands, was unreasonably dangerous and

16  defective.

17          **ANSWER:**  AstraZeneca denies the allegations of paragraph 58.

18          59.    Despite this defect, Defendant AstraZeneca continued to

19  aggressively promote Seroquel to physicians, including Plaintiff's physician and to

20  consumers, including Plaintiff.

21          **ANSWER:**  AstraZeneca denies the allegations of paragraph 59.

22          60.    As a direct and proximate result of the defective condition of

23  Seroquel, as manufactured and/or supplied and/or distributed by Defendant

24  AstraZeneca, Plaintiff has suffered injuries and damages as described herein.

25          **ANSWER:**  AstraZeneca denies the allegations of paragraph 60.

26

27      **ANSWER**
    3:08-cv-02493-EDL

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT IV

## STRICT PRODUCT LIABILITY

## (RESTATEMENT SECOND OF TORTS §402A (1965))

61.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

**ANSWER:**  AstraZeneca incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

62.    The Seroquel manufactured and/or distributed and/or supplied by Defendant AstraZeneca was not altered prior to use and was defective in design or formulation in that when it left the hands of Defendant AstraZeneca, the foreseeable risks exceeded the benefits associated with the design or formulation.

**ANSWER:**  AstraZeneca admits that, pursuant to approval by the FDA, it manufactures, distributes, and supplies SEROQUEL® for prescription by licensed physicians in the United States.  AstraZeneca denies the remaining allegations of paragraph 62.

63.    Alternatively, the Seroquel manufactured, distributed and/or supplied by Defendant AstraZeneca was defective in design or formulation in that when said drug product left the hands of said Defendant, it was unreasonably dangerous, was more dangerous than an ordinary consumer would expect, and was more dangerous than other anti-psychotic drugs available at that time.

**ANSWER:**  AstraZeneca admits that, pursuant to approval by the FDA, it manufactures, distributes, and supplies SEROQUEL® for prescription by licensed physicians in the United States.  AstraZeneca denies the remaining allegations of paragraph 63.

64.    There existed, at all times material hereto, safer alternative

30

**ANSWER**

3:08-cv-02493-EDL

1    medications.

2         **ANSWER:**  AstraZeneca denies the allegations of paragraph 64.

3         65.    As a direct and proximate result of the defective condition of

4    Seroquel, Plaintiff has suffered injuries and damages as described herein.

5         **ANSWER:**  AstraZeneca denies the allegations of paragraph 65.

6                              **COUNT V**

7                  **BREACH OF EXPRESS WARRANTY**

8         66.    Plaintiff repeats and realleges the allegations set forth in the

9    paragraphs above as if fully set forth herein.

10        **ANSWER:**  AstraZeneca incorporates by reference the preceding

11   paragraphs of this Answer as if fully set forth herein.

12        67.    Defendant AstraZeneca expressly warranted in the product

13   labeling and, on information and belief, in promotional materials that Seroquel was

14   safe and effective for the treatment of schizophrenia and bipolar mania, based on

15   adequate clinical studies and that it was "well-tolerated."

16        **ANSWER:**  AstraZeneca denies the allegations of paragraph 67.

17        68.    Defendant AstraZeneca failed to conform to these express

18   representations because Seroquel is not safe or effective and possesses a high risk of

19   serious, life-threatening side effects, including those suffered by Plaintiff.

20        **ANSWER:**  AstraZeneca denies the allegations of paragraph 68.

21        69.    Plaintiff has given reasonable notice to Defendant AstraZeneca of

22   its breach of express and implied warranties.

23        **ANSWER:**  AstraZeneca denies the allegations of paragraph 69.

24        70.    As a direct and proximate result of said breach of warranty,

25   Plaintiff has suffered injuries and damages as described herein.

26
                              31
27                          **ANSWER**
                          3:08-cv-02493-EDL
28

1    **ANSWER:**  AstraZeneca denies the allegations of paragraph 70.

2                            <u>**COUNT VI**</u>

3                    <u>**BREACH OF IMPLIED WARRANTY**</u>

4        71.    Plaintiff repeats and realleges the allegations set forth in the

5    paragraphs above as if fully set forth herein.

6        **ANSWER:**  AstraZeneca incorporates by reference the preceding

7    paragraphs of this Answer as if fully set forth herein.

8        72.    At the time Defendant AstraZeneca marketed, sold and distributed

9    Seroquel for use by Plaintiff and other consumers, said Defendant knew of the use for

10   which Seroquel was intended and impliedly warranted Seroquel to be of merchantable

11   quality and safe and fit for such use.

12       **ANSWER:**  AstraZeneca admits that, pursuant to approval by the FDA,

13   it markets, sells and distributes SEROQUEL® for prescription by licensed physicians

14   in the United States.  AstraZeneca denies the remaining allegations of paragraph 72.

15       73.    Plaintiff and her physician reasonably relied upon the skill and

16   judgment of Defendant AstraZeneca as to whether Seroquel was of merchantable

17   quality and safe and fit for its intended use.

18       **ANSWER:**  AstraZeneca denies the allegations of paragraph 73.

19       74.    Contrary to such implied warranties, Seroquel was not of

20   merchantable quality or safe or fit for its intended use because Seroquel was and is

21   unreasonably dangerous and unfit for the ordinary or particular purposes for which it

22   was used as described above.

23       **ANSWER:**  AstraZeneca denies the allegations of paragraph 74.

24       75.    Plaintiff has given reasonable notice to Defendant AstraZeneca of

25   its breach of express and implied warranties.

26

27

28

**ANSWER**
3:08-cv-02493-EDL

1    **ANSWER:**  AstraZeneca denies the allegations of paragraph 75.

2        76.    As a direct and proximate result of said breach of warranty,

3    Plaintiff has suffered injuries and damages as described herein.

4        **ANSWER:**  AstraZeneca denies the allegations of paragraph 76.

5                            <u>COUNT VII</u>

6            <u>**CONCEALMENT, SUPPRESSION, OR OMISSION**</u>

7                    <u>**OF MATERIAL FACTS**</u>

8        77.    Plaintiff repeats and realleges the allegations set forth in the

9    paragraphs above as if fully set forth herein.

10        **ANSWER:**  AstraZeneca incorporates by reference the preceding

11    paragraphs of this Answer as if fully set forth herein.

12        78.    Defendant AstraZeneca had a post-manufacturing and continuing

13    duty to warn, which arose when they knew, or with reasonable care should have

14    known, that adverse events associated with Seroquel were serious and sometimes

15    fatal.

16        **ANSWER:**  AstraZeneca states that the allegations of paragraph 78

17    constitute conclusions of law to which no response is required.  To the extent that

18    such allegations are construed as factual allegations directed to AstraZeneca, it denies

19    that the allegations of paragraph 78 fully and accurately state its duty under the law,

20    and therefore denies same.  AstraZeneca admits that it complied with its duty under

21    the law at all times.  AstraZeneca denies any remaining or inconsistent allegations of

22    paragraph 78.

23        79.    Defendant AstraZeneca knew or should have known (or would

24    have known had appropriate testing and/or safety monitoring been done) that use of

25    Seroquel caused serious and potentially life-threatening side effects of diabetes.

26                            33

27                          **ANSWER**
                        3:08-cv-02493-EDL

28

1    **ANSWER:**  AstraZeneca denies the allegations of paragraph 79.

2        80.    Defendant AstraZeneca omitted, suppressed, or concealed material

3    facts concerning the dangers and risks associated with the use of Seroquel, including

4    but not limited to the risks of diabetes mellitus and other injuries.  Further, said

5    Defendant purposely downplayed and understated the serious nature of the risks

6    associated with Seroquel use in order to increase the sales of the drug product.

7        **ANSWER:**  AstraZeneca denies the allegations of paragraph 80.

8        81.    Defendant AstraZeneca falsely and deceptively misrepresented or

9    knowingly omitted, suppressed, or concealed facts of such materiality that Seroquel

10   would never have been approved, no reasonable physician would have prescribed

11   Seroquel to Plaintiff, and Plaintiff would not have ingested Seroquel if they had

12   known about the concealed facts.

13       **ANSWER:**  AstraZeneca denies the allegations of paragraph 81.

14       82.    Defendant AstraZeneca engaged in calculated silence, despite their

15   knowledge of the growing public acceptance of misinformation and

16   misrepresentations regarding both the safety and efficacy of the use of Seroquel, and

17   did so because the prospect of significant future profits caused them to ignore

18   concerns regarding health and safety issues, all to the significant detriment of the

19   public, including the Plaintiff.

20       **ANSWER:**  AstraZeneca denies the allegations of paragraph 82.

21       83.    Safer and less expensive anti-psychotics were available to patients

22   being treated with Seroquel.

23       **ANSWER:**  AstraZeneca denies the allegations of paragraph 83.

24       84.    Defendant AstraZeneca's actions, as set forth herein, constitute

25   knowing omission, suppression or concealment of material facts, made with the

26

27                              34

**ANSWER**
3:08-cv-02493-EDL

28

knowledge and intent that doctors and their patients, including Plaintiff, would rely upon such concealment, suppression or omission in connection with the prescribing and use of Seroquel.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 84.

85.    In fact, Plaintiff, directly and/or through Plaintiff's prescribing physician, was induced by the Defendant AstraZeneca's omission, suppression and concealment to use Seroquel.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 85.

86.    As a direct and proximate result of the conduct of Defendant AstraZeneca as described herein, the Plaintiff has suffered injuries and damages as described herein.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 86.

## SEPARATE OR AFFIRMATIVE DEFENSES

1.    Plaintiff's alleged injuries were proximately caused by circumstances, events, or persons over whom AstraZeneca had no authority or control and for which AstraZeneca is not answerable in damages to Plaintiff.

2.    Plaintiff assumed the risks, if any, inherent in the use and continued use of SEROQUEL®.

3.    To the extent Plaintiff's claims were caused by the actions, omissions, or products of persons or entities over whom AstraZeneca has no dominion, authority, or control, AstraZeneca is entitled to have its liability to the Plaintiff, if any, reduced as a result of the fault or negligence of said persons or entities, pursuant to governing law.

4.    Plaintiff's recovery is barred and/or should be reduced under the applicable law because of Plaintiff's contributory negligence or fault and/or

35

**ANSWER**
3:08-cv-02493-EDL

comparative negligence or fault.

5.      Plaintiff's alleged injuries, if related to Plaintiff's use of SEROQUEL®, were caused by an unforeseeable material and substantial alteration, change, improper handling, or misuse of the product after it left the control of AstraZeneca.

6.      The New Drug Application for SEROQUEL® was approved by the FDA under the applicable statute, 21 U.S.C. § 301 et seq., and regulations promulgated thereunder.  Compliance with such statutes and regulations by Defendants demonstrates that SEROQUEL® was safe and effective and not unreasonably dangerous and, further, preempts and bars Plaintiff's claims against AstraZeneca.  Compliance with such regulations also demonstrates that due care was exercised with respect to the design, manufacture, testing, marketing and sale of this prescription drug, and that it was neither defective nor unreasonably dangerous.

7.      Plaintiff's claims are preempted, in whole or in part, by federal law pursuant to the Supremacy Clause of the United States Constitution because of the pervasive federal regulation of prescription drug manufacturing, testing, marketing, and labeling.

8.      All labeling for SEROQUEL® has been approved by the FDA under the applicable statute, 21 U.S.C. § 201 et seq., and regulations promulgated thereunder.  As the agency charged with implementing the Food, Drug, and Cosmetic Act, the FDA affirmatively has stated that "under existing preemption principles, FDA approval of labeling . . . preempts conflicting or contrary State law."  71 Fed. Reg. at 3,934.  Moreover, the FDA has stated, "Given the comprehensiveness of FDA regulation of . . . labeling under the act, additional requirements for the disclosure of risk information are not necessarily more protective of patients.  Instead, they can

36

**ANSWER**
3:08-cv-02493-EDL

1    erode and disrupt the careful and truthful representations of benefits and risks that

2    prescribers need to make appropriate judgments about drug use.  Exaggeration of risk

3    could discourage appropriate use of a beneficial drug." Id. at 3,935.  Plaintiff's claims

4    based on the labeling for SEROQUEL® are therefore preempted by federal law

5    pursuant to the Supremacy Clause of the United States Constitution.

6        9.    Plaintiff's claims against AstraZeneca are barred as a matter of law

7    pursuant to relevant provisions of the Restatement (Third) of Torts and the

8    Restatement (Second) of Torts, including, but not limited, to Section 402A, comment

9    k.

10        10.    Persons other than AstraZeneca stood in the position of learned

11    intermediary between Plaintiff and AstraZeneca, which therefore owed and breached

12    no duty to warn Plaintiff directly, and the SEROQUEL® Plaintiff allegedly used was

13    therefore neither unreasonably dangerous nor defective by virtue of any alleged

14    absence of adequate warnings or instructions.

15        11.    Plaintiff's Complaint fails to state a claim upon which relief can be

16    granted against AstraZeneca in that the methods, standards, and techniques utilized

17    with respect to the design, manufacture, marketing, and sale of the prescription drug

18    SEROQUEL®, including adequate warnings and instructions with respect to the

19    product's use included in the product's package insert and other literature, conformed

20    to the applicable state of the art, and the applicable standard of care based upon

21    available medical and scientific knowledge.

22        12.    Plaintiff's claims are barred, in whole or in part, by the applicable

23    statutes of limitations and/or repose.

24        13.    Plaintiff's Complaint against AstraZeneca fails to state a claim

25    upon which relief may be granted.

26

27

28

**ANSWER**
3:08-cv-02493-EDL

14.    Plaintiff's claims against AstraZeneca are barred, in whole or in part, by laches, waiver, and/or estoppel.

15.    Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate alleged damages.

16.    The injuries and damages claimed by Plaintiff, if any, resulted from an intervening or superseding cause and/or causes, and any act or omission on the part of AstraZeneca was not the proximate and/or competent producing cause of such alleged injuries and damages.

17.    Any claims by Plaintiff relating to alleged communications with regulatory agencies of the United States government are barred in whole or in part by operation of applicable law, including First Amendment rights to petition the government.

18.    The alleged injuries and damages, if any, were the result of unavoidable circumstances that could not have been prevented by any person, including AstraZeneca.

19.    Plaintiff's Complaint fails to state a claim upon which relief can be granted as to costs, attorney's fees, expert fees, expenses, pre-judgment interest, post-judgment interest, refund, rescission, unjust enrichment, disgorgement, or restitution.

20.    Plaintiff's claims are barred in whole or in part because the commercial speech relating to SEROQUEL® was not false or misleading and is protected under the First Amendment to the United States Constitution and the applicable state constitution.

21.    Plaintiff's claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the FDA is charged under law with determining the content of warnings and labeling for prescription

38

**ANSWER**
3:08-cv-02493-EDL

1   drugs.

2        22.    Plaintiff cannot state a claim with regard to warnings and labeling

3   for prescription drugs because the remedy sought by Plaintiff is subject to the

4   exclusive regulation of the FDA.

5        23.    This Court should abstain from adjudicating Plaintiff's claims

6   relating to warnings and labeling in deference to the interpretation of regulations

7   relating to prescription drug labeling by the FDA.

8        24.    Upon information and belief, each item of economic loss alleged in

9   the Complaint was, or with reasonable certainty will be, replaced or indemnified in

10   whole or in part from collateral sources.

11        25.    Plaintiff did not detrimentally rely on any labeling, warnings, or

12   information concerning SEROQUEL®.

13        26.    Plaintiff's alleged injuries and damages, if any, were the result of

14   an idiosyncratic reaction which AstraZeneca could not reasonably foresee.

15        27.    Plaintiff, or Plaintiff's physicians, were aware or should have been

16   aware of any potential hazards reported to be associated with the use of

17   SEROQUEL® and appreciated or should have appreciated these potential hazards

18   based, in part, on the directions, information, and warnings provided by AstraZeneca

19   and others generally available in the medical and scientific literature.  Therefore,

20   Defendant AstraZeneca had no duty to warn of any alleged danger or defect.

21        28.    Plaintiff is barred from recovering any damages by virtue of the

22   fact that there was no practical or technically feasible alternative design or formulation

23   that would have prevented the harm alleged by the Plaintiff without substantially

24   impairing the usefulness or intended purpose of the product.

25        29.  Plaintiff's claims for breach of warranty are barred because Plaintiff

26

27

28

**ANSWER**
3:08-cv-02493-EDL

failed to give timely notice of any alleged breach of warranty.

30.    AstraZeneca did not sell or distribute the prescription drug SEROQUEL® directly to Plaintiff, and Plaintiff did not receive or rely upon any representations or warranties as alleged in the Complaint.  Plaintiff's claims are therefore barred by lack of privity between Plaintiff and AstraZeneca.

31.    Plaintiff's claims for breach of warranty, express or implied, are barred by the applicable provisions of the applicable state's Uniform Commercial Code.

32.    Plaintiff's Complaint fails to state a claim for which relief can be granted for fraud, misrepresentation, deception, omission, or concealment insofar as Plaintiff has failed to plead such claims with sufficient particularity as required by law.

33.    Plaintiff's claims purportedly asserted under statutes and regulations relating to prescription drugs fail, in whole or in part, because these statutes and regulations do not contain or create any private cause of action.

34.    Plaintiff's Complaint fails to state a claim against AstraZeneca upon which relief can be granted for punitive or exemplary damages.

35.    Plaintiff's claim for punitive or exemplary damages is barred under the applicable state and federal law, including State Farm Mut. Auto. Ins. Co. v. Campbell et al., 538 U.S. 408 (2003).  Permitting recovery of punitive or exemplary damages in this action would contravene AstraZeneca's rights as reserved by the Fifth, Seventh, Eighth, and Fourteenth Amendments to the United States Constitution and other provisions of the United States Constitution and the applicable state constitutions.

36.    Unless AstraZeneca's liability for punitive damages and the

40

1    appropriate amount of punitive damages are required to be established by clear and

2    convincing evidence, any award of punitive damages would violate AstraZeneca's due

3    process rights guaranteed by the Fourteenth Amendment to the United States

4    Constitution and by the applicable state constitutions, and also would be improper

5    under the applicable state common law and public policies.

6          37.    Plaintiff's claim for punitive damages against AstraZeneca cannot

7    be maintained, because an award of punitive damages would be void for vagueness,

8    both facially and as applied.  Among other deficiencies, there is an absence of

9    adequate notice of what conduct is subject to punishment; an absence of adequate

10   notice of what punishment may be imposed; an absence of a predetermined limit, such

11   as a maximum multiple of compensatory damages or a maximum amount, on the

12   amount of punitive damages that a jury may impose; a risk that punitive damages will

13   be imposed retrospectively based on conduct that was not deemed punishable at the

14   time the conduct occurred; and it would permit and encourage arbitrary and

15   discriminatory enforcement, all in violation of the due process clause of the

16   Fourteenth Amendment to the United States Constitution, the applicable state

17   constitutions, and the applicable state common law and public policies.

18         38.    Plaintiff's claim for punitive damages against AstraZeneca cannot

19   be maintained because any award of punitive damages would be by a jury that: (1) is

20   not provided standards of sufficient clarity for determining the appropriateness, and

21   the appropriate size, of a punitive damages award; (2) is not adequately instructed on

22   the limits on punitive damages imposed by the applicable principles of deterrence and

23   punishment; (3) is not expressly prohibited from awarding punitive damages, or

24   determining the amount of an award of punitive damages, in whole or in part, on the

25   basis of invidiously discriminatory characteristics, including the residence, wealth,

26

27

28

41

**ANSWER**
3:08-cv-02493-EDL

and corporate status of AstraZeneca; (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards.  Any such verdict would violate AstraZeneca's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the applicable state constitutions, and also would be improper under the applicable state common law and public policies.

39.    To the extent that the applicable state law permits punishment to be measured by the net worth or financial status of AstraZeneca and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution, the Commerce Clause of the United States Constitution, and the applicable state constitutions.

40.    With respect to Plaintiff's demand for punitive or exemplary damages, AstraZeneca specifically incorporates by reference any and all standards or limitations regarding the determination or enforceability of punitive or exemplary damages awards under federal law and the applicable state law.

41.    No act or omission of AstraZeneca was willful, unconscionable, oppressive, fraudulent, wanton, malicious, reckless, intentional, or with actual malice, with reckless disregard for the safety of Plaintiff or with conscious disregard and

**ANSWER**
3:08-cv-02493-EDL

1   indifference to the rights, safety and welfare of Plaintiff, and therefore Plaintiff's

2   Complaint fails to state a claim upon which relief can be granted for punitive or

3   exemplary damages.

4          42.    Plaintiff's Complaint seeks damages in excess of those permitted

5   by law.  AstraZeneca asserts any statutory or judicial protection from punitive or

6   exemplary damages which is available under the applicable law, and any award of

7   punitive or exemplary damages is barred.

8          43.    AstraZeneca reserves the right to modify, clarify, amend, or

9   supplement these separate or affirmative defenses as discovery proceeds in this case.

10

11  Dated:  July 11, 2008                    SIDLEY AUSTIN LLP

12

13

14                                  By: *s/ Catherine Valerio Barrad*
                                        Catherine Valerio Barrad
15                                      Attorneys for Defendants
16                                      AstraZeneca Pharmaceuticals LP and
                                        AstraZeneca LP
17

18              **DEMAND FOR JURY TRIAL**

19          Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP hereby

20  demand a jury trial in this action.

21

22

23

24

25

26                              43
                              **ANSWER**
27                          3:08-cv-02493-EDL

28

## **PRAYER**

WHEREFORE, AstraZeneca requests that this Court enter judgment in its favor and against Plaintiff on all counts and allegations of the Complaint and that the Court award AstraZeneca costs and such other relief as it deems just and proper.


Dated:  July 11, 2008                                          SIDLEY AUSTIN LLP



                                                  By: _s/ Catherine Valerio Barrad_
                                                          Catherine Valerio Barrad
                                                          Attorneys for Defendants
                                                          AstraZeneca Pharmaceuticals LP and
                                                          AstraZeneca LP

Of Counsel:

Michael W. Davis
James W. Mizgala
Sidley Austin LLP
One South Dearborn
Chicago, IL  60603

44

**ANSWER**
3:08-cv-02493-EDL
